UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LILLIAN ELLIOTT, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CONAGRA BRANDS, INC.,<br><br>Defendant. | No. 2:23-cv-01417-MCE-AC<br><br>**MEMORANDUM AND ORDER** |

Through this class action, Plaintiff Lillian Elliott ("Plaintiff"), individually and on behalf of all others similarly situated, seeks relief from Defendant Conagra Brands, Inc. ("Defendant") arising from the labeling and sale of "Smart Balance Original" buttery spread products ("the Product"). Plaintiff's Complaint sets forth the following causes of action: (1) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.; (2) violation of California's Unfair Competition Law ("UCL"), ECF Cal. Bus. & Prof. Code §§ 17200, et seq., Unlawful and Unfair Prongs; (3) Violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq.; (4) Breach of Express Warranty; (5) Breach of Implied Warranty; (6) Negligent Misrepresentation; (7) Breach of Contract; (8) Breach of the Duty of Good Faith and Fair Dealing; and (9) Fraudulent Inducement. Presently before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint, ECF No. 21, which has been fully briefed.

ECF Nos. 27 ("Pl.'s Opp'n"), 28 ("Def.'s Reply").  For the reasons set forth below, Defendant's Motion to Dismiss is GRANTED with leave to amend.[1]

## BACKGROUND

Plaintiff is an individual consumer and a resident of California.  Compl. ¶ 2. Defendant manufactures, markets, labels, and sells "Smart Balance Original," which Plaintiff purchased, along with other types of buttery spread products including, among others, "Smart Balance Extra Virgin Olive Oil" and "Smart Balance Omega-3."  Compl. ¶ 24, n.2; see also Smart Balance, *Buttery Spreads*, https://www.smartbalance.com/buttery-spreads (last visited June 7, 2024).

Until 2022, the Smart Balance products contained 64% vegetable oil.  Id. ¶ 27.  In 2022, however, the constitution of the Product was changed to include only 39% vegetable oil.  Id.  This deviation allegedly resulted in significant undesirable changes to the texture and usability of the spreads.  Id. ¶ 40—46.

Defendant nonetheless continued to label and market the products respectively as "Original," "Extra Virgin Olive Oil," and "Balance Omega-3" in packaging generally identical to the predecessor products.  Id. ¶ 29—34.  Also on the front packaging, however, in the lower left-hand corner, the exact vegetable oil percentage (in this case, 39%) is displayed in yellow lettering, which contrasts with the surrounding white lettering. Id. ¶ 72.  Displayed even more visibly, immediately next to the "Original" language, is the Omega-3 content of the buttery spread.  Def's Mot. to Dismiss at 1.  When the Smart Balance Original formula changed in 2022, this prominently-displayed number changed from 400mg of Omega-3s to 320mg.  Id. at 2.  Defendant also accurately reflected all ingredient and nutrition changes in the nutrition facts on the back of the packaging.  Id.

///

---

[1] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Local Rule 230(g).

2

Despite the accuracy of the labeling, Plaintiff claims she and other reasonable consumers were misled by the similarity of packaging and the marketing of the newly formulated product to the prior version, which led a repeat consumer to believe that the current Product still consists of the original 1997 formula.  Id. ¶ 68—69.

In addition, Plaintiff avers that Defendant falsely claimed on their product labels that "Smart Balance is great for cooking … Great for baking."  Compl. ¶ 79—82.  According to Plaintiff, since the formula change, the product has instead been entirely unusable for these advertised purposes.  Id. ¶ 82.  Accordingly, Plaintiff contends that Defendant's labeling, marketing, and advertising of the Product as "Original" and "Great for cooking… Great for baking" are deceptive and likely to mislead a reasonable consumer.  Id. ¶ 159.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6),[2] all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. (internal citations and quotations omitted).

///

---

[2] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure.

3

A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)).

Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs., Inc. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

## ANALYSIS

Defendant moves to dismiss each of Plaintiff's claims on the basis that Plaintiff has not alleged reasonable consumers will be misled by the product packaging, which is both truthful and accurate. It further contends that any claims that the product is "great for cooking" or "great for baking" are non-actionable puffery. For her part, Plaintiff contends that as a prior consumer of the buttery spread, she assumed, without examining the label, that the formula remained unchanged and she was essentially tricked into purchasing an adulterated product. Defendant has the better position.[3]

**A. No reasonable consumer would be misled by the Product's labeling.**

Each of Plaintiff's causes of action requires that she meet a reasonable consumer standard. See Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008) (holding that California's consumer protection laws are governed by the "reasonable consumer" test); Ebner v. Fresh, Inc., 838 F.3d 958, 965 (9th Cir. 2016) (noting the same);

---

[3] As a threshold matter, the Court concludes that Plaintiff has failed to plead that the Product is adulterated. The parties appear to agree on the definition of "adulterated" presented in the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 342, and incorporated into Cal. Health & Saf. C. § 110585. Accurately-labeled products do not qualify as economically adulterated under this statute. See Fed. Sec. Adm'r v. Quaker Oats Co., 318 U.S. 218, 230 (1943) (defining "economic adulteration" as a process "by which less expensive ingredients [are] substituted, or the proportion of more expensive ingredients diminished, so as to make the product, although not in itself deleterious, inferior to that which the consumer expected to receive when purchasing a product with the name under which it was sold") (citations omitted); U.S. v. Antonio Corrao Corp., 185 F.2d 372, 376 (2nd Cir. 1950) ("unless there is less olive oil than that stated on the label, the consumer … cannot be disadvantaged economically since he receives what he thinks he is buying"); Malgeri v. Vitamins Because LLC, 2022 WL 16635274, at *10 (S.D. Fla. 2022) (finding no class-wide adulteration because some products were accurately labeled). To the extent Plaintiff's claims are based on this theory, they are dismissed.

Sugawara v. Pepsico, Inc., 2009 WL 1439115 at *5 (E.D. Cal. 2009) (dismissing the plaintiff's warranty claims using the reasonable consumer standard); Classick v. Schell & Kampeter, Inc., 2021 WL 2003118 at *2 (E.D. Cal. 2021) (noting that one element of negligent misrepresentation, that of "actual and reasonable reliance," is akin to the reasonable consumer standard); Adamson v. ADT, LLC, 2014 WL 12558289 at *3 (C.D. Cal. 2014) (applying the reasonable consumer standard to a consumer contract).[4] Under this standard, Plaintiff "must show that members of the public are likely to be deceived." Williams, 552 F.3d at 938 (citations and quotation marks omitted). By itself, a compliant ingredient list does not excuse misrepresentations on the front label, nor does it shield a merchant from claims alleging deceptive labeling. Id. at 940. Reasonable consumers are not expected to look beyond misrepresentations on a product's front packaging to discover the truth on the ingredient list. Id. at 939.

      Here, Plaintiff has not met the reasonable consumer standard. The Product's packaging is both truthful and clear regarding the constitution of its contents. Defendant displays the exact vegetable oil content on the front of their packaging. This Court disagrees with Plaintiff's assertion that the vegetable oil percentage is displayed on a "small, nearly imperceptible label," that cannot be seen when the containers are stacked on store shelves. Compl. ¶ 34. Rather, it is clearly visible to the consumer who takes the time to pick up the Product and look at the front label. The disclaimer is printed in yellow text, a stark contrast to the surrounding white words, against a green background.

      Moreover, regardless of whether this disclaimer is visible on a store shelf (and this Court does not necessarily accept Plaintiff's argument that it is not), it is clearly apparent to the consumer who picks up the product and takes a brief glance at the front packaging. The consumer need not search or even rotate the packaging to find this straightforward and conspicuous disclaimer.

---

[4] Even assuming a consumer contract did exist, and that the claims made on the Product's labeling were incorporated into that contract, "courts in this Circuit frequently determine, as a matter of law, that a reasonable consumer is not likely to be misled by contract language." Adamson, 2014 WL 12558289 at *3 n.4. In other words, when the label is truthful, there is no breach.

Even larger and more conspicuous is Defendant's display of the Product's Omega-3 content.  Featured centrally in large, bolded lettering that is undoubtedly visible on a store shelf, this prominent feature changed from 400mg to 320mg when Defendant changed the recipe, informing any consumer who cares to read the label that the Product is different than that to which they may be accustomed.  Then, as stated above, the consumer who simply picks up the Product to read the front label will find the exact vegetable oil percentage conspicuously displayed.

The crux of Plaintiff's argument is essentially that she did not read the label.  The reasonable consumer who performs a quick scan of Smart Balance Original's front label knows the exact percentage of vegetable oil contained in the product they are purchasing.

Defendant's use of the word "Original" on the Product's front label does not change this Court's analysis.  It is not dishonest, unfair, or misleading to a reasonable consumer.  Indeed, the Ninth Circuit dealt with nearly identical language in Carrea v. Dreyer's Grand Ice Cream, Inc., holding that it "is implausible that a reasonable consumer would interpret 'Original Sundae Cone,' 'Original Vanilla,' and 'Classic,' to imply that Drumstick is more wholesome or nutritious than competing products.  *Notably, none of these phrases modify 'recipe,' 'ingredients,' '1928,' or any other term that might suggest that the modern Drumstick is identical in composition to its prototype*."  475 Fed.Appx. 113, 115 (9th Cir. 2012) (emphasis added).  In this jurisdiction, unless the term "Original" modifies a word like those provided above, it is not assumed to refer to a specific recipe or constitution.

Rather, here, Defendant labels their product as "Smart Balance Original" to differentiate it from the other flavors of Smart Balance buttery spreads, such as "Smart Balance Extra Virgin Olive Oil," "Smart Balance Organic," and "Smart Balance Light Buttery Spread with Flaxseed Oil," among others, all of which were reformulated at the same time.  Like the Drumstick product in Carrea, there exist several different variations of Smart Balance buttery spread, of which one is logically labeled the original.

7

The term *original* is defined as: "not secondary, derivative, or imitative." *Original*, MERRIAM-WEBSTER DICTIONARY ONLINE, https://www.merriam-webster.com/dictionary/original (last visited June 25, 2024).  In this case, "Smart Balance Original" is the first instance from which basic features are changed to formulate derivatives such as "Smart Balance Organic."  As in Carrea, the Product may not contain its original 1997 recipe, but within the context of the several buttery spreads offered by Defendant, it is, in fact, the original flavor from which Defendant's other buttery spreads are secondary or derivative.

Furthermore, Defendant never uses the term "Original" to make any misleading implications or specific claims about the Product or its ingredients, as alleged by Plaintiff.  This Court's prior decision in Peacock v. Pabst Brewing Co., LLC, 491 F.Supp.3d 713 (E.D. Cal. 2020) is illuminating.  There, consumers brought a class action alleging that Defendant's product titled "The Original Olympia Beer" combined with the catch phrase "It's the Water" and background images of waterfalls falsely created the impression that the beer was brewed in the Olympia area of Washington.  Id. at 717.  In denying the defendant's Motion to Dismiss, the court analogized to Carrea, noting that, there, "Dreyer's packaging lacked 'specific claims about content or ingredients' in relation to the 'Original' and 'Classic' statements, while Plaintiff in this case alleges the labeling on the Olympia Beer can . . . implies the water used in Olympia Beer comes from its original source in the Olympia area of Washington."  Id. at 719.

Here, like Carrea, and unlike Peacock, Defendant makes no claims or implications relating to their use of the word "Original."  Nowhere on the container of "Smart Balance Original" does Defendant suggest that the Product contains the original 1997 recipe.

///

///

///

///

8

Defendant's use of the word "Original" on the front label of the Product is not untrue, illegal, misleading, a material misrepresentation, or a breach of any alleged warranty or contract that may have existed.  The Product's labeling is not likely to mislead a reasonable consumer.  Any consumer who purchases the Product has ample opportunity to understand exactly what they are buying and make an informed decision.

### B. Defendant's language stating that the Product is "Great for cooking… Great for baking" constitutes nonactionable puffery.

Defendant's advertisements that the Product is "Great for cooking… Great for baking" are nonactionable.  Under California law, "[g]eneralized, vague, and unspecific assertions" upon which a reasonable consumer could not rely constitute nonactionable puffery.  Glen Holly Ent. Inc. v. Tektronix Inc., 343 F.3d 1000, 1015 (9th Cir. 2003); See also In re Pacquiao-Mayweather Boxing Match Pay-Per-View Litigation, 942 F.3d 1160, 1170 n.7 (9th Cir. 2019) (noting that a boxer's false statement that he was injury-free, made in a nonpublic questionnaire pre-fight, constituted "mere puffery" because consumers could not have relied on it in their decision to purchase the fight).  "The common theme that seems to run through cases considering puffery … is that consumer reliance will be induced by specific rather than general assertions."  Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service Inc., 911 F.2d 242, 245 (9th Cir. 1990) (citing Smith-Victor Corp. v. Sylvania Elec. Products, Inc., 242 F.Supp. 302, 308—09 (N.D. Ill. 1965)).  Advertising which simply asserts, in generalized terms, the superiority of a product is not actionable.  Id. (citing Smith-Victor, 242 F.Supp. at 308).  As opposed to generalized, subjective puffery, actionable statements must be quantifiable or make a claim regarding the "specific or absolute characteristics of a product."  Newcal Industries, Inc. v. Ikon Office Solution, 513 F.3d 1038, 1053 (9th Cir. 2008) (quoting id.).

///

///

///

More recently, in <u>Macomb Cnty. Employees' Retirement System v. Align Technology, Inc.</u>, investors sued a medical device manufacturer, alleging that senior executives had misrepresented the company's growth in China, claiming strong numbers despite knowing them to be untrue.  39 F.4th 1092, 1095 (9th Cir. 2022).  The Ninth Circuit held that, among others, the following statements "plainly fit beneath the umbrella of puffery[:]" "[w]e still have a great business in APAC … China is a great growth market for us … [China is] a market that's growing significantly for us with [g]reat economics."  <u>Id.</u> at 1099 (internal quotation marks omitted).  The Court noted that each puff uses vague and generic positive terms that are not "objectively verifiable."  <u>Id.</u> (citation omitted).

Here, Defendant's claim that the Product is "Great for cooking… Great for baking" is neither verifiable nor specific enough to constitute an actionable statement, nor is it likely to induce consumer reliance.  Description of a product or business as "great" is both unquantifiable and unverifiable, as well as extremely imprecise.  The average consumer knows to put little weight on a merchant's statement of this kind.

Like in <u>Macomb Cnty.</u>, Defendant's use of the word "great" merely makes a vague and generally positive statement, and in doing so merely suggests two potential uses for the Product.  It is neither quantifiable nor objectively verifiable, as it is itself not an objective statement.  What is "great" to one consumer may be unsatisfactory to another.  Further, these characteristics make it such that a reasonable consumer would not rely on this language in their decision to purchase the Product.

This Court finds that Defendant's description of the Product as "Great for cooking… Great for baking" is nonactionable puffery.  Thus, all claims pertaining to this language are dismissed.

///

///

///

///

**CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss, ECF No. 21, is GRANTED with leave to amend. Not later than ten (10) days from the date this Memorandum and Order is electronically filed, Plaintiff may, but is not required to, file an amended complaint. If no amended pleading is timely filed, the claims dismissed by virtue of this Order will be deemed dismissed with prejudice upon no further notice to the parties and this action will proceed on the remaining causes of action only.

IT IS SO ORDERED.

Dated: July 1, 2024

_____
MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE